UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GARNETT                                       CIVIL ACTION

VERSUS                                        NO: 14-479

PUGH ET AL.                                   SECTION: "J" (4)

### ORDER & REASONS

Before the Court is Plaintiff Paulette Garnett's *Motion for Spoliation of Evidence* **(Rec. Doc. 27)** and Defendants Christopher Pugh, Protective Insurance Company, and Waggoners Trucking Company's opposition thereto. (Rec. Doc. 35) Having considered the motion and memoranda of the parties, the record, and the applicable law, the Court finds that the motion should be **DENIED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL BACKGROUND

This action arises out of a rear-end collision involving Plaintiff Paulette Garnett (Garnett) and a tractor-trailer combination owned by Defendant Waggoners Trucking, Inc. (Waggoners) on February 5, 2013. (Rec. Doc. 27-30, p. 1-2) The facts surrounding the rear-end collision are in dispute. At or around the time of the collision, Garnett was allegedly traveling in the left lane of US 90B, also known as the "Westbank Expressway," near its intersection with Westwood Drive in Jefferson Parish, Louisiana. (Rec. Doc. 27-30, p. 2) At or around that same time, Garnett alleges that a Waggoners 2012

Kenworth tractor with flatbed trailer was traveling behind Garnett's vehicle. She further alleges that Christopher Pugh, a Waggoners employee, was operating the tractor-trailer and that his son, Jeremy Davis (Davis), who is also a Waggoners employee, rode with Pugh as his co-driver on the trip. Id. Garnett asserts that as she approached the intersection of Westwood Drive, observing a traffic signal change from green to yellow, she slowed her vehicle to stop, and the tractor-trailer operated by Pugh collided with the rear of her vehicle. Id. Although Garnett's deposition testimony reveals that she did admittedly change lanes prior to the collision, the parties dispute the specific time in which she changed lanes prior to slowing her vehicle. (Rec. Doc. 35, p. 2) While Garnett asserts that she did not believe her lane change to be of consequence in the rear end collision, Waggoners alleges that Garnett changed lanes and stopped abruptly in a way that left Pugh without enough time and distance to stop the tractor-trailer. (Rec. Doc. 27-30, p. 2-4)

On January 9, 2014, Garnett filed suit in the 24th Judicial District of Louisiana against Pugh, Waggoners, and Protective Insurance Company (Protective). (Rec. Doc. 1, p. 1) Thereafter, Protective removed the action to this Court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441 on February 28, 2014. (Rec. Doc. 1) Garnett filed a Motion to Compel (Rec. Doc. 20), which was heard for oral argument on January 28, 2015, seeking

production of various documents. The motion was opposed, and this Court ultimately granted the motion in part and denied the motion in part. (Rec. Doc. 26, p. 7) Garnett then filed the instant motion on February 21, 2015, seeking to have this Court (1) issue a judgment declaring that Defendants destroyed, mishandled, and altered critically important evidence relevant to the liability for the rear-end collision; (2) strike Defendants' responsive pleadings regarding liability as a penalty; (3) barring Defendants from disputing liability for the collision at trial; or (4) alternatively, allow adverse presumption jury charges for each piece of evidence Waggoners destroyed and altered. Defendants opposed the motion on March 3, 2015. (Rec. Doc. 35) On March 10, 2015, Garnett filed a reply. (Rec. Doc. 45)

## **PARTIES' ARGUMENTS**

Garnett argues that Waggoners altered, mishandled, and destroyed critically important evidence by: (1) "losing" Davis's recorded statement, which was taken at the time of the accident by Victor Villanova (Villanova), a Custard Insurance Adjusters (CIA) employee investigating the accident; (2) failing to preserve, or destroying, the engine control module data by allowing the data to be overwritten when the tractor experienced "subsequent deceleration events" between the time of the accident and the time the data was extracted; (3) failing to

3

preserve electronic data and hours of service documents that could help determine whether Pugh was fatigued at the time of the accident, including Pugh and Davis's subjective daily logs, fuel receipts, toll receipts, bills of lading, and other similar documents; and (4) failing to preserve identifiable Qualcomm systems data (tracking data) from the tractor(s) Pugh drove during the weeks and days prior to the accident.

As to the audio recording of Davis's statement taken immediately after the accident, Garnett alleges that this Court should reject any claims that Waggoners lost the recorded statement. Garnett asserts that Waggoners likely knew that the recorded statement was unfavorable to Pugh, so Waggoners demanded that Davis author a "biased/favorable" handwritten statement as a substitute for the recorded statement. Furthermore, Garnett questions why Villanova utilized "regular mail," rather than a mail service that would have allowed for tracking of the delivery in transporting the recorded statement. Alternatively, Garnett asserts that even if the statement was lost, Waggoners' failure to copy the recorded statement or hire an independent third party to transcribe the recording "demonstrates Waggoners' willful disregard for competent evidence preservation and retention protocol(s)." In addition, the summary of the statement, prepared by Villanova the day

after the accident, does not mitigate any prejudice suffered from not having the recorded statement.

Secondly, Garnett alleges that the Defendants failed to preserve, or destroyed, the relevant engine control module data (ECM). Because Defendants failed to download the ECM data in a reasonable amount of time, the data was overwritten when the tractor experienced "subsequent deceleration events" between the date of the accident and the date of the data extraction. In addition, Garnett is severely prejudiced by this missing data because it could have provided detailed and objective insight into the mechanics of the collision. Further, Garnett asserts that Defendants could have discharged their duty to preserve the data by notifying Garnett that they did not intend to download or otherwise preserve the data; therefore, Garnett could have then made arrangements to obtain the data.

Next, Garnett alleges that Defendants failed to preserve data and documents from the last week of January 2013 to the first week of February 2013 that could have been used to determine whether Pugh was fatigued at the time of the accident, including Pugh and Davis's subjective daily logs, fuel receipts, toll receipts, bills of lading, other similar documents, as well as identifiable QUALCOMM systems messaging and tracking data. Specifically, Garnett alleges that the tracking data was non-descript as to who drove the tractors during the weeks and days

5

prior to the accident and that the tracking data was altered. Garnett contends that Davis's daily log originally indicated that he was in the tractor's sleeper berth at the time of the collision, but that information was later "lined through" and corrected to state that Davis was "off-duty."

Finally, Garnett asserts that for all these reasons, Defendants bear a high degree of fault for destroying, mishandling, and altering evidence. Based on the severe prejudice caused to Garnett by Defendants' failure to preserve critical evidence, Garnett asserts that "stripping Defendants of their liability defenses" is the most appropriate penalty. Alternatively, Garnett seeks adverse presumption jury charges as to every piece of evidence that Defendants destroyed, mishandled, and altered.

Defendants deny all of the allegations regarding spoliation and pray that this Court deny Garnett's Motion for Spoliation of Evidence. Further, Defendants assert that Garnett has mischaracterized or exaggerated facts relating to: (1) the State Trooper's finding of fault related to the accident, (2) Villanova's testimony relating to the accident and Garnett being "extracted" from the vehicle, (3) referral to a settlement of property damage claims, (4) Protective Insurance Company allegedly pressuring Waggoners to terminate Pugh's employment, (5) Waggoners' failure to preserve drivers' logs and trip

envelope, (6) alleged false claims regarding documents produced after the hearing on the motion to compel, and (7) Defendants allegedly altering Davis's logs.

Defendants contend that they did not alter Davis's Driver log for February 5, 2013, but rather, Davis had edited the log prior to submitting it to Waggoners. Secondly, Defendants assert that they did not alter or destroy any Qualcomm data and have provided the relevant hours of service documents to Garnett. Defendants state that both Pugh and Davis's driver logs were submitted to Garnett, and that Garnett has all of the documents supporting Pugh's hours of service. Further, Defendants argue that the Qualcomm system could not have been used to enter the driver log hours, because the Waggoners units lacked this capability. Therefore, Defendants assert that since something that does not exist cannot be intentionally destroyed or altered, spoliation could not have occurred.

Additionally, Defendants deny that they altered or destroyed the audio tape of Jeremy Davis's statement. Neither Protective nor Waggoners' claim administrator nor Waggoners' safety department received the tape. Furthermore, Garnett is not prejudiced by this missing tape, because Villanova's typed summary of Davis's statement is in her possession.

Finally, Defendants deny that they intentionally destroyed ECM data or acted in bad faith. Waggoners does not dispute that

7

the ECM data was not downloaded until June 25, 2014, which was approximately eight days after receiving the written request by Garnett. Further, Waggoners contends that Garnett could have requested the ECM data download earlier, and Waggoners would have complied with such a request. Defendants explain that the ECM data could provide no information regarding Garnett's movements, speed, or distance in front of the unit that Pugh was operating. In addition, Garnett has failed to show that Defendants have acted intentionally or in bad faith, so sanctions are not warranted.

In her reply, Garnett disputes many of Defendants' statements. Garnett alleges that Defendants incorrectly stated that: (1) Villanova's testimony that emergency personnel removed Garnett from her car is "hearsay," (2) Garnett previously stated the Qualcomm system should have been used to enter driver log hours, (3) because Waggoners located Pugh and Davis's logs on a back-up server, "all is well" with respect to how Waggoners responded to Garnett's multiple requests for the driving logs, (4) the engine control module data is irrelevant and Garnett could have obtained the data before Waggoners destroyed it, (5) the recorded statement of Pugh's son was, without explanation, "simply lost," and (6) Davis's log for February 5, 2013, was not materially altered, and hence not spoiled. Garnett goes on to

8

argue why each of these statements is incorrect and the importance of each issue.

## LEGAL STANDARD

When evaluating allegations regarding spoliation of evidence, federal courts sitting in diversity are to apply federal evidentiary rules rather than state spoliation laws. Condrey v. SunTrust Bank of Georgia, 431 F.3d 191, 203 (5th Cir. 2005) (citing King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003)); Lafayette Ins. Co. v. CMA Dishmachines, No. 03-1098, 2005 WL 1038495, at *3 (E.D. La. Apr. 26, 2005)(Vance, J.). A plaintiff alleging spoliation must establish that the defendant intentionally destroyed the evidence for the purpose of depriving opposing parties of its use. Catoire v. Caprock Telecommunications Corp., No. 01-3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002). It is insufficient to show that a party acted negligently, rather than intentionally, in spoiling the evidence. Id.

The spoliation of evidence doctrine provides courts with the authority to impose sanctions on responsible parties when there has been intentional destruction of relevant evidence. This Court has previously held that in order for a court to impose an adverse inference or other sanctions, it must first determine whether the doctrine of spoliation applies. Collongues v. State Farm Auto. Ins. Co., No. 09-3202, 2010 WL 103878, at *2

(E.D. La. Jan. 7, 2010). In order for the doctrine to apply, the movant must prove two elements: (1) that the party having control over the evidence had a duty to preserve the evidence at the time it was destroyed; and (2) that the destruction of the evidence was intentional. Id. (citing Menges v. Cliffs Drilling Co., No. 99-2159, 2000 WL 765082, at *2 (E.D. La. June 12, 2000)). In order for a party to have a duty to preserve evidence, the party must have notice that the evidence is relevant to litigation. Menges, 2000 WL 765082, at *2. In addition, negligence is not sufficient to support the imposition of sanctions for spoliation. See In re Bertucci Contracting Co., L.L.C., No. CIV.A. 12-0697, 2014 WL 5483707, at *3 (E.D. La. Oct. 29, 2014); Lafayette Ins. Co., 2005 WL 1038495, at *3. Furthermore, it is settled that a sanction predicated upon spoliation of evidence requires a showing that the party acted in bad faith. See King, 337 F.3d at 556; United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000).

## DISCUSSION

As a threshold matter, it does appear to this Court that Waggoners was put on notice that litigation was likely to arise from the accident when they dispatched CIA to the scene. Additionally, litigation was reasonably foreseeable when Garnett was transported to the hospital following the accident. Thus, the Court finds that Defendants had a duty to preserve relevant

10


data within their control. Consolidated Aluminum Corp. v. Alcoa, Inc., 244 F.R.D. 335, 339 (M.D. La. July 19, 2006)(noting that the duty to preserve arises "when a party should have known that the evidence may be relevant to future litigation" (internal quotation marks and citation omitted)). The question therefore becomes whether Plaintiff has shown that Defendant intentionally destroyed the evidence. Menges, 2000 WL 765082, at *2 ("Once a court concludes that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed and the likely contents of that evidence.")

1. **DAVIS'S RECORDED STATEMENT**

In regards to the recorded statement of Davis that Villanova took immediately following the accident, Garnett has made several allegations regarding Defendants' actions that include: (1) Defendants destroyed the tape, (2) Defendants should have ensured it was transcribed by an independent third party, and (3) Defendants had questionable intentions when taking down Davis's handwritten statement. (Rec. Doc. 27-30, p. 13-14) Although courts within the Fifth Circuit have recognized that a "strong chain" of circumstantial evidence could be sufficient to establish the intent to destroy evidence, Garnett has failed to provide any evidence indicating that the Defendants destroyed the tape. See In re Bertucci Contracting

11

Co., L.L.C., 2014 WL 5483707, at *3. Garnett only offers a string of conclusory statements indicating that the Defendants wanted the tape to be destroyed because it likely contained an unfavorable statement. (Rec. Doc. 27-30, p. 13) These conclusory statements are insufficient to support any sanction for spoliation of evidence.

Alternatively, Garnett argues that Villanova mailing the tape via regular mail, the fact that no copy was made, and Waggoners' failure to "hire an independent third party to transcribe the recording demonstrates Waggoners' willful disregard for competent evidence preservation and retention protocol(s)." (Rec. Doc. 27-10, p. 14) However, these allegations again do not amount to the intentional destruction of evidence for purposes of spoliation. First, Villanova is not a party to this action, so the method of mail he chose to use to send the tape to Defendants is not determinative here. And Defendants have submitted affidavits indicating that neither PIC nor Waggoners received the tape. (Rec. Doc. 35-5 & Rec. Doc. 35-8) Thus, Garnett simply has not established any evidence indicating that Defendants destroyed Davis's recorded statement. Furthermore, Villanova completed a typed summary of the statement the day following the accident, which Garnett has in her possession. (Rec. Doc. 35, pp. 10-11) The Court finds that Garnett has failed to show that Defendants intentionally

12

destroyed the recorded statement, as necessary to support any sanction against Defendants for spoliation of evidence. The Court similarly finds that the lack of a copy and the mere fact that Waggoners could have hired an independent third party to transcribe the recording cannot support the imposition of sanctions here.

2. **ECM DATA**

Garnett also alleges that Defendants intentionally destroyed the ECM data by failing to download that data within a reasonable amount of time. (Rec. Doc. 27-30, p. 14) Defendants downloaded the ECM data within eight days of a written request for such data from Garnett, which request was not made until approximately sixteen months after the accident. (Rec. Doc. 35, p. 12) However, as a result of the tractor's subsequent deceleration events, the data from the date of the accident had been overwritten and destroyed when Defendants downloaded it. (Rec. Doc. 27-30, p. 14) Again, Garnett has not shown that Defendants intentionally destroyed the data. Her conclusory allegation stating as much is insufficient. Therefore, the imposition of the requested sanctions is improper as to the ECM data.

3. **QUALCOMM TRACKING AND MESSAGING DATA**

Next, Garnett asserts that Defendants failed to preserve the Qualcomm messaging data from the latter part of January 2013

13

until February 5, 2013. (Rec. Doc. 27-30, p. 15) Garnett does not provide any support for her allegations regarding Defendants' destruction of or failure to preserve the Qualcomm messaging data. Although Defendants do not directly address this argument in their opposition, Pugh's deposition testimony suggests that the Qualcomm messaging system was down at the time of the accident and some time prior to the accident. (Rec. Doc. 35-2, p. 3) Garnett's spoliation claim regarding the Qualcomm data fails.

In addition, Garnett states, "With respect to the electronic tracking data, Waggoners produced non-identifiable tracking data for only one relevant date, the date of the accident, but did not preserve identifiable data from the tractor(s) Pugh drove during the weeks and days leading up to and including the date of the accident." (Rec. Doc. 27-30, p. 15) Defendants addressed this argument by explaining that none of the Waggoners units had the capability of allowing a person to enter his driver log hours. (Rec. Doc. 35, p. 9) Although Garnett denies any reference to driver logs in her reply, her original motion does make several references to the tracking data being non-identifiable or not indicating who was driving. (Rec. Doc. 27-30, p. 8, 9, 15, 21) In any case, Defendants have in fact produced the tracking data for the day of the accident. As to any other days that Garnett may have requested tracking

14

data for, she has not presented any evidence supporting the contention that Defendants in fact destroyed that evidence. Garnett's claim of spoliation as to the Qualcomm tracking data is unsupported and without merit.

### 4. HOURS OF SERVICE DOCUMENTS

Finally, Garnett alleges, "Waggoners breached its obligation to preserve critically important documents and electronic data . . . . The missing documents not only included all of Pugh and his son's subjective daily logs, but critically important objective documents such as fuel receipts, toll receipts, bills of lading and other similar documents." (Rec. Doc. 27-30, pp. 14-15)(emphasis omitted). In addition, Garnett further contends that someone altered Davis's driver logs for the date of the accident. Id. at 20. Defendants explain that both Davis and Pugh's driver logs were turned over to Garnett, and the Order on Garnett's Motion to Compel indicated that Garnett was not entitled to Davis's "trip envelope" documents. (Rec. Doc. 26, p. 7) Therefore, the record suggests that at least some of the requested documents, including payroll data, were turned over to Garnett (Rec. Doc. 27-30, p. 7), while others were found to be irrelevant. (Rec. Doc. 26, p. 7) Moreover, Garnett has not put forth any evidence indicating that Defendants destroyed any of the documents requested.

Finally, there is no indication of when Davis's driver log was corrected. While Garnett contends that Waggoners corrected the statement, Defendants explain that the log was turned in with that alteration. (Rec. Doc. 35, p. 9) Here, Garnett has failed to put forth any evidence indicating that Defendants altered the logs. Therefore, the unsubstantiated claims regarding the hours of service documents do not support a finding of spoliation, and sanctions for spoliation are improper.

Garnett has failed to show that Defendants acted in bad faith or intentionally destroyed any evidence discussed herein. Therefore, the Court finds that it would be improper to strike Defendants' liability defenses or allow any adverse jury charge.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Spoliation of Evidence* **(Rec. Doc. 27)** is **DENIED**.

New Orleans, Louisiana this 18th day of March, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE